**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| KIM BAKER, | ) |
|       Petitioner, | ) |
| v. | ) No. 3:08-CV-110 PS |
| SUPERINTENDENT, | ) |
|       Respondent. | ) |

## OPINION AND ORDER

Kim Baker, a *pro se* prisoner, filed this habeas corpus petition challenging a Conduct Adjustment Board's (CAB) decision to reduce his good-time credit by 60 days for his involvement in an altercation with his cellmate at the Miami Correctional Center. The respondent filed a response, but Baker did not file a traverse.

## BACKGROUND

On August 1, 2007, Correctional Officer Howard Smith prepared a conduct report charging Baker with a Class B Offense (#212) against his cellmate, David Henson. (DE 6 at 1.)[1] Offense #212 of the Adult Disciplinary Procedures prohibits "[c]ommitting a battery upon another person without a weapon or inflicting serious injury (e.g. fighting)." (DE 6-20 at 2.) Officer Smith's report stated the following:

> On 8-1-07 at approximate [sic] 2308 p.m. I C/O H. Smith was conducting a range check of CHU 200 Range as I approched [sic] cell 247/248 I observed both offenders in a verbal altercation [sic] At this time Offender Baker DOC #143897 notice [sic] me at the cell door. He then stated "He's hitting me with a lock.' At this time I called a signal, [sic] After first responders arrived on the scene both offenders were removed from cell and placed in mechanical restriants [sic]. At

---

[1] Because Baker did not file a traverse, the Court accepts the facts outlined in respondent's memorandum [DE 6] as true. *See Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982).

> this time it became apparent that there had been a physical altercation due to marks on offender. . . . First responder escorted both offenders off unit to OSB. Upon search of cell I C/O Smith found a padlock attached to the end of a sock, lying in the corner of the cell.

(DE 6-2.)

Baker was notified of the charge against him on August 2, 2007, and he was served with Smith's conduct report and a notice of disciplinary hearing on the same day. (DE 6-2 at 1.) Baker was also notified of his rights. (*Id.*) He pled not guilty, requested a lay advocate, and sought to obtain evidence from three witnesses, but did not request any physical evidence. (DE 6-8 at 1.) Although his requests were granted, the three witnesses from whom Baker sought testimony (Offenders Kevin Schlemer, Chuck Adams, and Napoleon Bridges) submitted written statements in lieu of live testimony because each was detained in segregation. (*See* DE 6-9, 6-10 & 6-11.)

This case presented a swearing contest to the CAB. There were no witnesses to the attack other than the two combatants. On the one hand, Baker testified that Henson attacked him and he was merely protecting himself. (DE 16-15; 16-18.) On the other, Henson said that Baker was the aggressor and that he had defensive bruises on his forearms that proved that Baker hit him with a lock in a sock and he was merely protecting himself. (DE 6-14.) By the time of the hearing both men still had bruises on them, which the members of the CAB personally viewed. (DE 6-15.) Photographs taken shortly after the fight of the both Henson and Baker, were also admitted into evidence at the CAB hearing. (*Id.*)

The CAB disciplinary hearing took place on August 9, 2007. (DE 6-15.) After reviewing the evidence – including witness statements, photographs, staff reports and personally viewing the marks on Henson and Baker – the CAB found Baker guilty of the offense. (*Id.*)

2

The CAB imposed the following sanctions: a written reprimand, time served in disciplinary segregation, and a sixty-day earned credit time deprivation. (*Id*.) Baker appealed to the Facility Head on August 21, 2007, but his appeal was denied. (DE 6-16 and 6-17.) Baker again appealed, this time to the Final Reviewing Authority, and again his appeal was denied. (DE 6-18 and 6-19.)

Baker then came to this Court seeking *habeas* relief. (DE 1.) His petition essentially asserts three claims: (1) that there was insufficient evidence to find him guilty of the charge; (2) that the procedures used in the CAB hearing denied him due process because he was not allowed to call his witnesses for live testimony nor was he able to obtain security camera footage of the events leading to the charge; and (3) the sanctions imposed on him constituted cruel and unusual punishment. (DE 1 at 3-5.)

## DISCUSSION

I will start with the sufficiency of the evidence. "[T]he relevant question [in a habeas case] is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). This standard is a modest one. As the seventh Circuit has stated:

> [T]he findings of a prison disciplinary board [should] have the support of some evidence in the record. . . . This is a lenient standard . . . requiring no more than a modicum of evidence. . . . Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. . . . It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision. . . . The relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, brackets, and citations omitted; emphasis in original).

3

Baker invites the Court to re-weigh the credibility of the witnesses, but that is not permitted in a habeas corpus proceeding.

> In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

*McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotations marks omitted). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457. Therefore, "once the court has found the evidence reliable, its inquiry ends - it should not look further to see whether other evidence in the record may have suggested an opposite conclusion." *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989).

At a minimum, the CAB had "some evidence" to support its finding that Baker was guilty of "fighting" in violation of Offense Number 212 of the Adult Disciplinary Code. In particular, Officer Smith's report, Henson's witness statement, the photographic evidence the CAB considered, as well as the viewing of the marks on Henson at the hearing provided a sufficient basis for the CAB to conclude that there had been a physical altercation. The fact that Henson had defensive wounds on his forearms likely led the CAB to conclude that Baker was the aggressor. In any event, no matter who the aggressor was, it is clear that Baker was guilty of "fighting" – or at least there was some evidence of that – and that is all that the CAB needed to find. While the evidence might not exclude Baker's theory about how his cellmate acquired his injuries (he injured himself in the heat of his overzealous attack, (*see* DE 6-15)), the exclusion of all competing theories is not the standard, *see Hill*, 472 U.S. at 457; *Viens*, 871 F.2d at 1335.

Instead, the CAB must have "some evidence" to support its conclusion, *see Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006); *see also Webb*, 224 F.3d at 652, which it did.

Baker's due process argument does not fair much better. Indiana prisoners possess a liberty interest in good-time credits they have earned, and therefore due process must be afforded before reducing a prisoner's credit. *See McPherson*, 188 F.3d at 785-86. *See also Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002). Due process requires, among other procedural safeguards, that a prisoner be allowed to call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). While *Wolff* does not guarantee prisoners the unfettered right to call any witnesses or present any evidence they wish regardless of its relevancy, the hearing board "may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt." *Piggie*, 277 F.3d at 925. Although the hearing board need not explain to the inmate why it denied his request for evidence, it has the burden of proving to this Court in a habeas corpus proceeding that its denial was not arbitrary or capricious. *Id*.

Here, although Baker was not allowed to call his witnesses to present live testimony at the CAB hearing, he was able to submit their statements on his behalf. (*See* DE 6-9, 6-10, & 6-11.) Moreover, those statements each indicate that the witness was not available to testify at the hearing because he was in segregation. (*Id*.) That explanation is sufficient. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). But regardless, Baker does not explain how the witnesses' live testimony would have helped him more than submitting their written statements.

5

*See id*. at 678.  Baker's assertion that the exculpatory evidence was "not considered," (DE 1 at 4), therefore is incorrect.

Baker's due process claim regarding the CAB's failure to consider the security camera and intercom recordings is similarly unavailing.  As an initial matter, Baker did not request these materials for his hearing.  (*See* DE 6-8 (Baker indicated that he "[did] not request any physical evidence").)  Baker argues that the reason he failed to request them is that "until [his] appeal to higher authority, [he] didn't even know that they exist[ed]."  (DE 1 at 4.)  That might form the basis for a claim that the correctional authorities failed to disclose material exculpatory evidence.  *See Piggie*, 344 F.3d at 678.  But although Baker asserts that the recordings "would have vindicated [him]," (DE 1 at 4), his explanation as to why that is the case is wanting.  In particular, he claims:

> Video will show that the correctional officer who wrote the conduct report left me in harm's way to answer a telephone downstairs and 100 feet away after I complained to him that my roommate was battering me with a lock.  The video record will show that the lock that he used was recovered downstairs from a sewer trap, and that the officer who found it waved [sic] as a trophy.  The video will show the earlier fight that my roommate had with other offenders.

(*Id*.)  These assertions have nothing to do with the CAB's conclusion that Baker was involved in a fight.  That's what makes this case different from *Piggie*, where the court remanded so that the district court could review the tapes because it did not know if the videos would be exculpatory.  *See Piggie*, 344 F.3d at 678-79.  Here, even assuming that Baker's claims are true, the recordings would have done nothing to disprove the allegations in the conduct report.  As a result, Baker was not deprived of his due process right to exculpatory evidence.

All that's left now is Baker's claim that the CAB's sanction amounted to cruel and unusual punishment in violation of the Eighth Amendment.  (DE 1 at 5.)  Baker's Eighth

Amendment claim is basically that the 60-day reduction in good time credit was disproportionate to his violation in light of his otherwise good behavior. The Eighth Amendment requires that disciplinary sanctions doled out by CABs must be proportional to the infractions at issue. *See Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir. 2001). But the good time credit reduction here was well within the range of reasonable sanctions. Baker would like the Court to revisit the CAB's underlying factual findings and conclude that he was simply defending himself from an attempted murder, (*see* DE 1 at 5), but that is not the Court's role here, *see McPherson*, 188 F.3d at 786. Nor is it the Court's role to re-weigh his past good behavior to find what it thinks would be an appropriate sanction. Instead, the Court's role is to determine whether the 60-day reduction was so grossly disproportional as to violate the Eighth Amendment. It was not.

## CONCLUSION

For the foregoing reasons, Baker's petition for writ of habeas corpus [DE 1] is **DENIED**.

**SO ORDERED**.

ENTERED: March 25, 2009.

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
